```
┌──────────────────────────────────┐
│ USDC SDNY                         │
│ DOCUMENT                          │
│ ELECTRONICALLY FILED              │
│ DOC #: _____           │
│ DATE FILED:  9/10/2024            │
└──────────────────────────────────┘
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CAROLINA TANJUTCO,

　　　　　　Petitioner,

　　-against-

NYLIFE SECURITIES LLC, et al.,

　　　　　　Respondents.

---

23-CV-4889 (BCM)

**OPINION AND ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

Petitioner Carolina Tanjutco, proceeding pro se, commenced this action on June 9, 2023, pursuant to the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, seeking to confirm in part and vacate in part an award (Award) (Dkt. 5 at ECF pp. 3-9) issued on May 26, 2023, by a Financial Industry Regulatory Authority (FINRA) arbitration panel. The parties to the arbitration proceeding were Tanjutco, her former employer NYLife Securities LLC (NYLife), and its affiliate New York Life Insurance Company (NYLIC). In this Court, however, Tanjutco names four respondents: NYLife, NYLIC (collectively, the NYLife Parties), FINRA, and the United States Securities and Exchange Commission (SEC). *See* Am. Pet. (Dkt. 11) ¶¶ 2-5. Petitioner asks this Court to confirm the favorable portion of the Award, which recommends the expungement of information concerning a 2016 customer dispute from FINRA's Central Registration Depository (CRD); to vacate the remainder of the Award, which was largely unfavorable to her; to order the expungement of additional information from CRD, concerning the circumstances of her departure from NYLife, on the ground that it was defamatory; and to award her damages for income lost as a result of the defamation. *Id.* ¶ 6; *see also id.* at 14-15, ¶¶ a-d.

All four respondents oppose (for the most part) the relief sought. The SEC filed a response (SEC Resp.) (Dkt. 37) in which it principally argues that it is immune from suit under the doctrine of sovereign immunity. FINRA filed a motion to dismiss (Dkt. 35) contending, among other things,

that it is shielded from suit by arbitral immunity. The NYLife Parties filed a response (NYLife Resp.) (Dkt. 39) asking the Court to dismiss the petition in its entirety for lack of subject-matter jurisdiction or, in the alternative, to deny it on the merits insofar as petitioner seeks vacatur of any portion of the Award. The parties have agreed, pursuant to 28 U.S.C. § 636(c)(1), that I may conduct all proceedings in this matter and enter judgment accordingly. (Dkt. 32.)

After careful review of the record, I conclude that the SEC is immune from suit; that petitioner has failed to state any cognizable claim against FINRA; and that this Court lacks subject-matter jurisdiction over the remainder of this action. Consequently, the Amended Petition will be dismissed.

## I.    BACKGROUND

This action arises out of the termination of Tanjutco's employment as a registered representative of NYLife, a securities broker-dealer, on November 15, 2021. As required by FINRA, the self-regulatory organization (SRO) that registers broker-dealers and their representatives, NYLife filed a Form U-5 Uniform Termination Notice regarding Tanjutco's departure. *See Lobaito v. Fin. Indus. Regul. Auth., Inc.*, 2014 WL 4470423, at *4 (S.D.N.Y. Sept. 9, 2014) (pursuant to FINRA regulations, "[w]henever a securities firm terminates a registered employee, the firm must file a Form U–5 with FINRA, stating the reason for termination"), *aff'd*, 599 F. App'x 400 (2d Cir. 2015). In the U-5, NYLife stated that Tanjutco resigned while under enhanced supervision review for engaging in unapproved outside business activities (OBA) and failing to disclose a proposed insured's nicotine use on a life insurance application. *See* Resp. Ans. to Am. St. of Claim (Dkt. 5 at ECF pp. 22-29) at 2, 4-5; NYLife U-5 (Dkt. 5-1 at ECF pp. 88-94) at ECF pp. 90 (question 7B), 91 (question 7F(1)), 93 (narrative response to question 7B), 94 (narrative response to question 7F(1)).

2

FINRA is required, by statute, to collect and retain "registration information," 15 U.S.C. § 78o-3(i)(1)(A), including the information reported to it on U-4s and U-5s,[1] and to disclose certain registration information to the public through a "readily accessible electronic or other process." 15 U.S.C. § 78o-3(i)(1)(B). "To carry out its statutory duties, FINRA established the CRD database and BrokerCheck, an internet resource that the public can use to obtain registration information about current and former representatives." *Forgione v. Gaglio*, 2015 WL 718270, at *17 (S.D.N.Y. Feb. 13, 2015) (quoting *Buscetto v. Fin. Indus. Reg. Auth.,* 2012 WL 1623874, at *3 (D.N.J. May 9, 2012)). A registered representative's BrokerCheck listing is a public record, the contents of which (though not necessarily the truth of those contents) are subject to judicial notice and may be considered in connection with a motion to dismiss made pursuant to Fed. R. Civ. P. 12(b)(6). *Forgione*, 2015 WL 718270, at *17.

Petitioner's public BrokerCheck listing includes the following disclosure:

> At the time of her resignation, Ms. Tanjutco was under enhanced supervision review and discipline for her continued participation in a denied outside business activity as a 501c(3) charity board member, an unapproved LinkedIn business profile and failure to properly disclose a proposed insured's nicotine use on a life insurance application. The review also identified two undisclosed outside business activities, ITC International Trade & Communications and CDI Corporate Services, Inc. listing Ms. Tanjutco as the registered agent.

*See* https://brokercheck.finra.org/individual/summary/5565044 (last visited September 10, 2024).[2] Additionally, BrokerCheck discloses a customer dispute dating from 2016. *Id.*

---

[1] A Form U-4 Uniform Application for Securities Industry Registration or Transfer "must be filed whenever a registered representative becomes an employee of a securities firm." *Lobaito*, 2014 WL 4470423, at *4. Form U-4 includes a provision requiring arbitration of "all disputes between a securities representative and her employer." *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 201 (2d Cir. 1999).

[2] BrokerCheck also displays petitioner's "Broker Comment," as follows: "Applicant had a pending application for OBA for the charity position, her business LinkedIn profile was managed by NYL hearsay at the time of her resignation, and the alleged E-app was completely answered and signed

### A.    The Arbitration

On July 12, 2022, proceeding pro se, petitioner initiated a FINRA arbitration proceeding, No. 22-01428, against NYLife. Petitioner alleged that FINRA's investigation into her OBA (which, as explained below, took place after her departure from NYLife) was ultimately "terminated" with a "cautionary action," which – she was assured at the time – would not require disclosure on her Form U-4 or be included in the CRD. *See* Am. St. of Claim (Dkt. 5 at ECF pp. 17-21) ¶¶ 3-4. On that basis, Tanjutco sought to have all information about her OBA expunged from the CRD, including Occurrences No. 2169419 and 2169420 (reflecting the information reported by NYLife on her U-5). *Id*. ¶ 8. She also requested expungement of Occurrence No. 1865245, concerning the 2016 customer dispute, which was "not substantiated." *Id*. ¶¶ 9-10. Lastly, petitioner asked for damages from NYLife for "falsely stat[ing] allegations on my U5 which they knew had no basis in fact or in law." *Id*. ¶ 11. NYLife's defamatory statements, petitioner alleged, "depriv[ed] me of my usual compensation from the Company averaging $120,000 per year," plus "unpaid annuity trails and other unsettled insurance commissions." *Id*.

NYLife denied any wrongdoing, asserting that its U-5 was "completely accurate." Resp. Ans. to Am. St. of Claim at 2. The NYLife parties then counterclaimed, seeking damages and injunctive relief for Tanjutco's alleged breach of the "non-replacement" provision of her Agent's Contract,[3] together with attorneys' fees and expenses. *See* Counterclaim (Dkt. 5 at ECF pp. 33-44)

---

by the customer based on the fact that customer already stopped smoking at time of application, and finally, the alleged undisclosed business ITC pertained to the same EIN of an old corporate registry CDI Services regd in 2001 and ceased to exist post 9/11. its bldg offices no longer exists, hence no business activity was found by the FINRA Matter Investigation. Since 2008, all tax returns of applicant indicated only income from New York Life. NYL failed to show any evidence to prove its claim." https://brokercheck.finra.org/individual/summary/5565044.

[3] The "non-replacement" provision functioned as a non-solicitation provision, prohibiting Tanjutco, for a period of 24 months following her termination, from inducing or assisting "any

4

¶¶ 1-4, 18-22, 32-55. The arbitration panel (Panel), chaired by public arbitrator Carol Maria Luttati, conducted two days of hearings in March 2023. *See* Award at 6.

The Panel issued its Award on May 26, 2023, recommending expungement of Occurrence No. 1865245 (concerning the 2016 customer dispute). *See* Award ¶ 8. The Panel made this recommendation after the NYLife Parties confirmed, at the arbitration hearing, that the underlying customer complaint "lacked merit." *Id*. The Panel recommended expungement – rather than ordering it – because, under FINRA Rule 2080(a), Tanjutco was required to "obtain confirmation from a court of competent jurisdiction before the CRD will execute the expungement directive." *Id*. The Panel further recommended (subject to confirmation by a court of competent jurisdiction) that the wording of Occurrences No. 2169419 and 2169420 be modified so as to identify one "undisclosed outside business activity" rather than two. *Id*. ¶ 9. The Panel did not award damages to Tanjutco on her defamation claim, nor to the NYLife Parties on their breach of contract claim. *Id*. ¶ 7. However, it enjoined petitioner from violating her Agent's Contract for two years, *id*. ¶ 6, and assessed $14,329.50 against her in attorneys' fees. *Id*. ¶¶ 1-5.

## B.    This Action

Petitioner commenced this action on June 9, 2023, by filing a Petition and Motion against NYLife, NYLIC, and arbitrator Luttati, seeking to confirm the Award insofar as it recommends expungement of Occurrence No. 1865245, and vacate the unfavorable portions. *See* Pet. (Dkt. 1) ¶ 3. She also sought an order from this Court expunging all three Occurrences from her records, and money damages, including $59,759 in lost commissions and two years of other lost income

---

customer of New York Life or any of its subsidiary or affiliated companies" to "reduce, replace, lapse, surrender, cancel or otherwise relinquish any insurance, annuities or securities products obtained from or through New York Life or any of its subsidiary or affiliated companies." *See* Counterclaim ¶¶ 18-20.

(estimated at $240,000), based on NYLife's "callous refusal" to "remove the defamatory report on petitioner's CRD records," which "prevent[ed] her from obtaining registration and employment from broker-dealers from 2021 until to-date 2023." *Id*. at 11, ¶¶ B, D. Petitioner alleged that she was a resident of New York. *Id*. ¶ 1.

On July 27, 2023, the Hon. Laura T. Swain, Chief United States District Judge, dismissed the Petition for lack of subject-matter jurisdiction. *Tanjutco v. NYLife Sec. LLC*, 2023 WL 4848465 (S.D.N.Y. July 27, 2023) (*Tanjutco I*). As Judge Swain pointed out:

> The Federal Arbitration Act ("FAA") does not independently grant subject matter jurisdiction to a federal district court. *See, e.g.*, *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983). "A federal court may entertain an action brought under the FAA only if the action has an 'independent jurisdictional basis.'" *Badgerow v. Walters*, [596 U.S. 1, 5,] 142 S. Ct. 1310, 1316 (2022) (citation omitted).

*Tanjutco I*, 2023 WL 4848465, at *2. Judge Swain then found that the Petition failed to demonstrate that this Court could exercise either federal question jurisdiction or diversity jurisdiction over Tanjutco's claims. *Id*. at *3-4. Consequently, the Court dismissed the Petition with leave to amend. *Id*. at *5.

### C.    The Amended Petition

Rather than refile in state court within the statute of limitations,[4] petitioner filed her Amended Petition in this Court on September 27, 2023, accompanied by a memorandum of law (Pet. Mem.) (Dkt. 12). As noted above, petitioner now names four respondents: NYLife, NYLIC, FINRA, and the SEC. The relief she requests, however, is almost identical to the relief requested in her original Petition. She seeks to confirm the Award insofar as it recommends expungement of

---

[4] *See* N.Y. Civ. Prac. Law & Rules § 7510 (application to confirm an arbitration award must be made within one year after the award is delivered); *id.* § 7511(a) (application to vacate or modify an arbitration award must be made within 90 days after the award is delivered).

Occurrence No. 1865245, and vacate the unfavorable portions. *See* Am. Pet. ¶ 6 (listing five "causes of action," all requesting that portions of the Award either be confirmed or be vacated). She also seeks an order from this Court expunging Occurrences No. 2169419 and 2169420 from her records, *id*. at 15, ¶ b, and money damages, including $59,759 in lost commissions, $25,482 in "insurance and annuity trail commissions," and two years of other lost income (estimated at $240,000), based on respondents' "callous refusal" to "remove the defamatory report on petitioner's CRD records," which "prevent[ed] her from obtaining registration and employment from broker-dealers from 2021 until to-date 2023." *Id*. at 15, ¶ d.

In her current pleading, petitioner invokes both federal question jurisdiction, pursuant to 28 U.S.C. § 1331, and diversity jurisdiction, pursuant to 28 U.S.C. § 1332. As to federal question jurisdiction, petitioner alleges that her "right to federal procedural due process . . . [has] been violated by the [SEC] authorizing [FINRA] to enter allegations of violations through a public disclosure known as Brokercheck, initially intended for the protection of the investing public, but today it is commonly used by broker-dealers as a defamatory avenue to prevent competition from associated persons and former members of the firm . . . from being hired or transferred to another broker-dealer." Am. Pet. ¶ C. She goes on to accuse the Panel of violating her "right to procedural due process" when it permitted the NYLife Parties to file their counterclaim, and violating her "constitutional right to cross-examine the witness" when it permitted them to make a late application for attorneys' fees via affidavit. *Id.* ¶¶ 16, 20. Additionally, she alleges that the resolution of her claims "necessarily involves determination of federal question against illegal restraint of trade and interstate commerce." *Id. ¶* C; *see also id*. ¶ 24 (alleging that the two-year non-replacement clause in her Agent's Contract "constitutes an illegal restraint of trade or commerce in violation of federal and New York anti-trust laws"). Petitioner adds that, as a result

of the defamatory content of the NYLife U-5, she "lost the opportunity for gainful employment that infringes on her Constitutional right to livelihood[.]" *Id.* ¶ 26.

As to diversity, petitioner now alleges that she "is a foreign dual citizen of the Philippines" and a resident of "Dasmarinas Village, Makati City, Philippines where she is currently situated." Am. Pet. ¶ 1. She further alleges that NYLife "is a Limited Liability Company formed in Delaware" and a "citizen of the State of Texas," because its Vice President Tom Dahl Engelbrechtsen is "a resident of" and "holds office" in Texas. *Id.* ¶ 2. She asserts that NYLIC "is a corporation with offices across [the] United States, including at California, where the principal incident herein arose giving rise to counterclaim[.]" *Id.* ¶ 3. She alleges that FINRA and the SEC are citizens of Washington, DC. *Id.* ¶¶ 4-5.

### D.    Motion Practice

On January 16, 2024, the SEC and the NYLife Parties filed their Responses to the Amended Petition. Additionally, the NYLife Parties submitted an affidavit from NYLIC Associate General Counsel Regina Y. Won (Won Aff.) (Dkt. 39-1), attesting that both NYLife Parties are citizens of New York for diversity purposes,[5] and an affidavit from Christopher J. Murdoch (Murdoch Aff.) (Dkt. 39-2), attaching additional copies of the Answer and Counterclaim submitted in the underlying arbitration.

On the same day, FINRA filed its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), supported by a memorandum of law (FINRA Mem.) (Dkt. 35-1), along with a second motion,

---

[5] Won attests that NYLIC is "a life insurance company licensed by the State of New York" with "[i]ts principal place of business [at] 51 Madison Avenue, New York, New York, 10010." Won Aff. ¶ 3. NYLIC is also the sole member of NYLIFE LLC, a Delaware limited liability company, which in turn is the sole member of respondent NYLife, which is also a Delaware limited liability company. *Id.* ¶ 2. Both LLCs have their principal place of business at 51 Madison Avenue in New York City. *Id.*

made pursuant to Fed. R. Civ. P. 21, to remove Luttati "as a named respondent from the docket of this action." (Dkt. 36.) On February 9, 2024, petitioner filed a document entitled "Reply Brief" (Pet. Reply) (Dkt. 44), portions of which addressed FINRA's motions. On March 8, 2024, FINRA filed its reply brief (Dkt. 48) in further support of its motion to dismiss. On March 13, 2024, petitioner filed her own motion, which I construed as a motion to amend pursuant to Fed. R. Civ. P. 15(a), for "leave to correct the docket title to include Carol Maria Luttati." (Dkt. 50.)

On March 25, 2024, I held that petitioner could not state any personal claim against Luttati because all of her complained-of conduct was undertaken "in her capacity as an arbitrator and 'within the scope of the arbitral process,' rendering her 'absolutely immune' from any resulting civil liability." *Tanjutco v. NYLife Sec. LLC*, 2024 WL 1258385, at *3 (S.D.N.Y. Mar. 25, 2024) (*Tanjutco II*) (quoting *Austern v. Chicago Bd. Options Exch., Inc.*, 898 F.2d 882, 886 (2d Cir. 1990)). Consequently, I granted FINRA's Rule 21 motion, denied petitioner's Rule 15(a) motion, and struck petitioner's proposed Second Amended Petition (Dkt. 52), which purported to add Luttati as a named respondent. *Id*. at *4. However, I did not rule on FINRA's Rule 12(b)(6) motion at that time. Instead, I requested a supplemental brief addressing the effect of FINRA Rule 2080(b), which requires that FINRA be named as an additional party whenever a member or associated person seeks judicial confirmation of an arbitration award containing expungement relief. *Id*. FINRA filed that brief (FINRA Supp. Mem.) (Dkt. 58) on April 1, 2024, and petitioner filed her own supplemental brief (Dkt. 60) on April 10, 2024.

### E.    The Parties' Arguments

#### 1.    The SEC

The SEC generously construes the Amended Petition as alleging a due process claim for damages against the agency for "authorizing FINRA to enter reports relating to Petitioner in the

Central Records Depository ('CRD'), which is publicly available through BrokerCheck." SEC Resp. at 1. Any such claim must fail, the SEC argues, because "the United States has not waived its sovereign immunity for due process claims seeking money damages." *Id.* at 4. In the alternative, the SEC argues that petitioner's due process claim must be dismissed – and therefore cannot invest this Court with federal question jurisdiction – because petitioner "does not explain how the SEC deprived Petitioner of a liberty or property interest by authorizing FINRA or BrokerCheck to publicly disclose information about investment professionals." *Id.* at 5.

### 2.    FINRA

In its initial motion papers, FINRA noted that the Amended Petition "implies – although it does not specifically articulate – certain constitutional claims against FINRA, accusing it of depriving her of 'due process'" during the arbitration proceeding, FINRA Mem. at 8, and argued that any such claims are barred by the doctrine of absolute arbitral immunity. *Id.* at 9-11. More generally, FINRA argued that it is not a proper party to an action brought to confirm, vacate, or modify a FINRA arbitration award, as it merely provided the forum for the Panel to adjudicate the parties' dispute. *Id.* at 11-13. To the extent petitioner seeks damages against FINRA for having promulgated the rules governing U-4s, U-5s, the CRD, and BrokerCheck, FINRA explained, those claims are also barred, because FINRA is not a state actor and, in any event, is immune from suit "for conduct falling within the scope of the SRO's regulatory and general oversight functions." *Id.* at 13 n.5 (quoting *D'Alessio v. N.Y. Stock Exch., Inc.*, 258 F.3d 93, 104-05 (2d Cir. 2001)).

However, FINRA acknowledged, it is a proper party to this action for purposes of petitioner's effort to confirm the portion of the Award recommending expungement of Occurrence No. 1865245, and does not oppose that relief. *See* FINRA Mem. at 15 ("If the Court confirms that part of the Award, FINRA will abide by that Court Order and does not need to be a party to the

remainder of this action."). In its supplemental brief, FINRA explains that its motion to dismiss is "limited to Petitioner's Partial Motion to Vacate and does not apply to her Motion to Confirm in Part an Arbitration Award." FINRA Supp. Mem. at 4. FINRA relies on FINRA Rule 2080(b), which requires that it be named as a party when a member or associated person petitions a court to confirm an arbitration award that recommends "expungement relief." *Id*.[6]

### 3.    NYLife Parties

The NYLife Parties argue that the Amended Petition should be dismissed in its entirety for lack of subject-matter jurisdiction. NYLife Resp. at 5. There is no diversity jurisdiction, they argue, because even though petitioner "fails to clearly allege her own citizenship," she acknowledged in her original Petition (and in her *in forma pauperis* application, *see* Dkt. 2) that she resided in New York City at that time, making her a citizen of New York and destroying diversity. *Id*. at 6-9. There is no federal question jurisdiction, the NYLife Parties contend, because petitioner has not stated any cognizable federal claim against any respondent. *Id*. at 10-11. With respect to petitioner's broad assertions that this action implicates her "Constitutional right to livelihood," Am. Pet. ¶ 26, and involves "interstate commerce," *id*. at 3 ¶ C, the NYLife Parties point out that constitutional claims

---

[6] FINRA Rule 2080 states, in pertinent part:

(a) Members or associated persons seeking to expunge information from the CRD system arising from disputes with customers must obtain an order from a court of competent jurisdiction directing such expungement or confirming an arbitration award containing expungement relief.

(b) Members or associated persons petitioning a court for expungement relief or seeking judicial confirmation of an arbitration award containing expungement relief must name FINRA as an additional party and serve FINRA with all appropriate documents unless this requirement is waived pursuant to subparagraph (1) or (2) below.

*See* https://www.finra.org/rules-guidance/rulebooks/finra-rules/2080. There is no indication in the record before this Court that petitioner requested a waiver of the requirement set forth in Rule 2080(b).

cannot be asserted against private actors, such as themselves; that there is no general Constitutional right to do business; and that "to create federal jurisdiction, . . . some federal right, be it constitutional, statutory, or 'federal common law' must exist, independent of the general rights emanating from the power of Congress to regulate commerce." NYLife Resp. at 10-11 (quoting *Goldstone v. S. Shore Fed. & Loan Ass'n*, 402 F. Supp. 1291, 1293 (E.D.N.Y. 1975)).

Should this Court proceed to the merits, the NYLife Defendants argue that the Award should be confirmed, because petitioner "fails to establish any of the four grounds enumerated by the Federal Arbitration Act for vacating an award: fraud, corruption, refusal to hear evidence, or that the Arbitrators exceeded their authority." NYLife Resp. at 6 (citing 9 U.S.C. § 10(a)).

### 4. Petitioner

In her reply brief – as relevant here – petitioner argues that she may invoke this Court's federal question jurisdiction because she has alleged "Constitutional violations against [her] right to earn a livelihood which equates to forfeiture of property without due process." Pet. Reply at 1; *see also id*. at 4 (asserting that the two-year injunction imposed by the Panel is an "outright violation of [her] Constitutional rights"). She adds that FINRA's arbitration proceedings violated her Constitutional right to a jury trial, *id*. at 2; that its "very existence and SEC's grant of power to FINRA may present a serious violation [of] the Private Non-delegation Clause of the Constitution," *id*. at 7 (citing *Alpine Sec. Corp. v. Fin. Indus. Regul. Auth.*, 2023 WL 4703307, at *4 (D.C. Cir. July 5, 2023) (per curiam)); and that since FINRA engages in "government action" when it regulates registered representatives, it should be considered a "state actor" which can be held liable in damages for violating her constitutional rights. *Id*. at 8.

As to diversity jurisdiction, petitioner asserts that since she filed this action she "resumed residency at her home country," the Philippines. Pet. Reply at 11; *see also id*. Ex. E (Dkt. 44 at

ECF p. 24) (copies of petitioner's Philippines passport, driver's license, and ID card).[7] She argues that NYLIC's "principal place of operations" must be in Dallas, Texas, because that is "where all financial transactions are consummated" and contracts are issued. Pet. Reply at 11; *see also id*. Ex. F (Dkt. 44 at ECF p. 25) (customer letter showing Dallas address). As for NYLife, petitioner again states that it must be a citizen of Texas because Engelbrechtsen, a Texas resident, is its "Member and Principal Operations Officer." Pet. Reply at 11; *see also id*. Ex. G (Dkt. 44 at ECF p. 26) (BrokerCheck printout for Engelbrechtsen, associating him with NYLife in Dallas, Texas).[8]

Finally, petitioner argues that both FINRA and the SEC should remain as parties because FINRA consented to be named pursuant to Rule 2080(b) and, "by extension, [the SEC] is named for violations committed as a result of the federal power it delegated to FINRA." Pet. Reply at 12.

## II.     LEGAL STANDARDS

### A.     Rule 12(b)(6) and Rule 12(b)(1)

Where, as here, a respondent moves to dismiss a petition to confirm or vacate an arbitration award pursuant to Rule 12(b)(6), the court treats the petition as it would a complaint. *See*, *e.g*., *Giller v. Oracle USA, Inc.*, 2012 WL 467323, at *1 (S.D.N.Y. Feb. 14, 2012), *aff'd*, 512 F. App'x 71 (2d Cir. 2013). Thus, if the petition fails to present "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the deficient claims may be dismissed. *Absolute Activist Value Master Fund Ltd. v. Ficeto*, 677 F.3d 60, 65 (2d Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In construing the pleading, the court must "accept as

---

[7] According to BrokerCheck, petitioner became employed in March 2024 by Pruco Securities, LLC, in Paramus, New Jersey, and in April 2024 by Prudential Financial Planning Services in New York, New York. *See* https://brokercheck.finra.org/individual/summary/5565044.

[8] Neither the BrokerCheck printout nor any other evidence submitted by petitioner suggests that Engelbrechtsen is a member of NYLife. As noted above, Won attests that NYLLC has only one member, NYLIFE LLC, which in turn has only one member, NYLIC. Won Aff. ¶ 2.

true all factual statements alleged in the [petition] and draw all reasonable inferences in favor of the non-moving party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, those factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "[A] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

When faced with a Rule 12(b)(6) motion, the court may consider (in addition to the allegations set forth in the petition itself) documents that are attached to, referenced in, or "integral to" the pleading, *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011), and matters of which judicial notice may be taken. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *Giller*, 2012 WL 467323, at *1. The court need not accept the petitioner's factual allegations if they are "contradicted by other matters asserted or relied upon or incorporated by reference by a plaintiff in drafting the complaint." *Fisk v. Letterman*, 401 F. Supp. 2d 362, 368 (S.D.N.Y. 2005).

In considering a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, the court may also "refer to evidence outside the pleadings." *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir. 2000); *see also APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) ("[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.") (quoting *LeBlanc v. Cleveland*, 198 F.3d 353, 356 (2d Cir. 1999)). The plaintiff has the burden of proof, and "must prove the existence of subject matter jurisdiction by a preponderance of the evidence." *Moser v. Pollin*, 294 F.3d 335, 339 (2d Cir. 2002); *accord Makarova*, 201 F.3d at 113; *Arjent LLC v. U.S. S.E.C.*, 7 F. Supp. 3d 378, 382 (S.D.N.Y. 2014).

14

### B.    Subject-Matter Jurisdiction

"Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). If the district court "lacks the statutory or constitutional power to adjudicate" a case, the case must be dismissed for lack of subject-matter jurisdiction. *Cortlandt St. Recovery Corp. v. Hellas Telecomm. S.À.R.L.*, 790 F.3d 411, 416-17 (2d Cir. 2015).

The FAA is a federal statute. However, as Judge Swain explained in *Tanjutco I*, the FAA "does not independently grant subject matter jurisdiction to a federal district court." 2023 WL 4848465, at *2; *see also Moses H. Cone Mem. Hosp.*, 460 U.S. at 25 n.32; *Badgerow*, 596 U.S. at 8. Thus, "a litigant who seeks to invoke the [FAA] to aid arbitration must satisfy the requirements of jurisdictional amount and diversity of citizenship, or demonstrate the existence of some other independent basis of subject matter jurisdiction, before the court may validly entertain an application for any remedy authorized by the statute." *DaPuzzo v. Globalvest Mgmt. Co., L.P.*, 263 F. Supp. 2d 714, 722 (S.D.N.Y. 2003). Moreover, when conducting the required jurisdictional inquiry, the court may only consider the issues properly presented in the petition. *Badgerow*, 596 U.S. at 5. It cannot "'look through' the petition to the 'underlying substantive controversy' between the parties" to establish either federal question or diversity jurisdiction. *Id.* at *5 (quoting *Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009)).

### C.    Pro Se Petitioner

Where, as here, the petitioner is proceeding pro se, the courts must construe her papers "liberally," interpreting them to raise the strongest claims they suggest. *J.S. v. T'Kach*, 714 F.3d 99, 103 (2d Cir. 2013) (Rule 12(b)(6)); *Jones v. Nat'l Commun. & Surveillance Networks*, 409 F. Supp. 2d 456, 465-66 (S.D.N.Y. 2006) (Rule 12(b)(1)). However, pro se status "does not exempt

a party from compliance with relevant rules of procedural and substantive law." *Maisonet v. Metro.*

*Hosp. & Health Hosp. Corp.*, 640 F. Supp. 2d 345, 348 (S.D.N.Y. 2009) (citation omitted). Thus,

even a pro se petitioner "must state a plausible claim for relief." *Walker v. Schult*, 717 F.3d 119,

124 (2d Cir. 2013). Likewise, "jurisdictional requirements are not relaxed based on a litigant's pro

se status." *Alijaj v. Wells Fargo*, 2022 WL 392864, at *3-4 (S.D.N.Y. Feb. 9, 2022) (quoting

*Escoffier v. MFY Legal Servs.*, 2015 WL 221048, at *1 (S.D.N.Y. Jan. 15, 2015)).

## III.    DISCUSSION

### A.    The SEC

Even construing petitioner's allegations liberally, as required, it is difficult to discern the

contours of any potentially cognizable claim that she might have against the SEC, which was not

involved in any way with the termination of her employment, the content of her U-5 (or the

corresponding CRD disclosure), or the outcome of her arbitration proceeding. Although she

blames the SEC in general terms for "authorizing" FINRA to operate BrokerCheck – which in her

view is too often misused by broker-dealers as a "defamatory avenue to prevent competition," Am.

Pet. ¶ C – she does not (and could not) claim that in so doing the SEC violated any law. The

Securities Exchange Act of 1934 expressly requires a registered securities association, such as

FINRA, to "establish and maintain a system for collecting and retaining registration information,"

including "a readily accessible electronic or other process" to provide prompt information

regarding the registration information of "members," such as NYLife, and their "associated

persons, " such as Tanjutco. 15 U.S.C. § 78o-3(i)(1)(A)-(B).[9] Moreover, although the SEC credits

---

[9] In her reply brief, petitioner cites *Alpine Sec. Corp.*, 2023 WL 4703307, for the proposition that
"FINRA may improperly wield authority vested only in the executive branch." Pet. Reply at 7. In
*Alpine*, however, the question raised by the appellant (a broker-dealer facing an expedited FINRA
enforcement action that threatened to put it out of business) was whether the SEC could
constitutionally delegate *enforcement* authority to FINRA, including the authority to mete out

petitioner with having asserted a damages claim against it for due process violations, the Amended

Petition is (at best) unclear as to what if any relief she seeks against the SEC.[10]

The SEC is correct, however, that if and to the extent the Amended Petition can be

construed to assert a damages claim against it, that claim is barred by sovereign immunity. The

United States and its agencies, including the SEC, are immune from suit unless "Congress has

expressly waived sovereign immunity." *Sprecher v. Graber*, 716 F.2d 968, 973 (2d Cir. 1983);

*accord Arjent*, 7 F. Supp. 3d at 383; *Am. Benefits Grp., Inc. v. Nat'l Ass'n of Sec. Dealers*, 1999

WL 605246, at *4 (S.D.N.Y. Aug. 10, 1999). Moreover, "waivers of sovereign immunity must be

'unequivocally expressed' in statutory text, and cannot simply be implied." *Adeleke v. United*

*States*, 355 F.3d 144, 150 (2d Cir. 2004) (quoting *United States v. Nordic Village, Inc.*, 503 U.S.

30, 33 (1992)). In the absence of an express waiver, the court lacks subject-matter jurisdiction over

the claim against the agency, and must dismiss it pursuant to Rule 12(b)(1). *Arjent*, 7 F. Supp. 3d

at 383 ("[B]ecause sovereign immunity is 'jurisdictional in nature,' questions of sovereign

---

corresponding punishments. Petitioner does not claim to have been the subject of any FINRA
enforcement action. Moreover, the *Alpine* court did not reach the merits of appellant's question. In
the decision cited by petitioner, a split panel of the D.C. Circuit granted Alpine an injunction
pending appeal. Judge Walker, concurring, stated that "Alpine has raised a serious argument that
FINRA impermissibly exercises significant executive power," but stressed that "a vote to stay is
not a decision on the merits." 2023 WL 4703307, at *2 (cleaned up). Both before and after *Alpine*,
"[a]lthough opportunities have abounded, no court has ever held that FINRA or its relationship
with the SEC is unconstitutional." *Kim v. Fin. Indus. Regul. Auth., Inc.*, 698 F. Supp. 3d 147, 153
(D.D.C. 2023).

[10] The only money damages requested in the Amended Petition are the commissions and other
income that petitioner allegedly lost as a result of the statements made by NYLife on her U-5. Am.
Pet. at 15, ¶ d. Although she is not specific in the *ad damnum* clause, elsewhere in the pleading
she expressly states that she seeks these damages on "her claim against counterclaimant New York
Life Insurance Company and respondent NYLIFE Securities LLC," *id*. ¶ B, not on any claim
against the SEC. *See also id*. ¶ 18 (noting that these are the same damages she sought against the
NYLife Parties, unsuccessfully, in arbitration); Pet. Mem. at 18-20 (confirming that the relief
sought in this Court is limited to confirmation of a portion of the Award, vacatur of other portions
of the Award, and money damages from the NYLife Parties).

immunity implicate a court's subject matter jurisdiction and are analyzed under Rule 12(b)(1)[.]");
*Am. Benefits Grp.*, 1999 WL 605246, at *8.

Here, petitioner does not contend that the federal government has waived sovereign immunity with respect to the claim or claims she seeks to bring against the SEC, and does not identify any statute that could be the basis for such a contention. Consequently, the SEC's motion to dismiss will be granted pursuant to Rule 12(b)(1).

### B.    FINRA

As explained in *Tanjutco II*, an arbitrator is absolutely immune from civil liability for acts undertaken "in her capacity as an arbitrator and 'within the scope of the arbitral process.'" 2024 WL 1258385, at *3 (quoting *Austern*, 898 F.2d at 886). The same is true of the sponsoring arbitral organization (here, FINRA), which cannot be sued for the rulings made by the arbitration panel in the course of adjudicating the dispute, even if (as petitioner here alleges) those decisions were so erroneous, unfair, or biased as to "violat[e] [her] right to procedural due process." *Austern*, 898 F.2d at 884-85. These allegations may be germane to petitioner's attempt to vacate portions of the Award pursuant to 9 U.S.C. § 10(a) (or state law), but it is well-settled that they cannot be the basis of any claim against the arbitrators or the sponsoring organization. *Tanjutco II*, 2024 WL 1258385, at *3; *accord Landmark Ventures, Inc. v. Cohen*, 2014 WL 6784397, at *2-4 (S.D.N.Y. Nov. 26, 2014) (dismissing all claims against ICC where "the conduct [plaintiff] complains about occurred within the scope of the arbitral process," including allegedly unfair procedural and scheduling decisions and a ruling assessing attorneys' fees against plaintiff); *Funcia v. NYSE Grp.*, 2007 WL 4276897, at *3 (S.D.N.Y. Dec. 3, 2007) (dismissing all claims against arbitrators and NYSE "in connection with their handling of the Arbitration"); *Yadav v. New York Stock Exch., Inc.*, 1992 WL 197409, at *3 (S.D.N.Y. Aug. 4, 1992) (dismissing all claims against NYSE, even though it

"served [plaintiffs] badly in delaying for a month before sending them the award," because the complained-of conduct was "'integrally related to the arbitration process'") (quoting *Austern*, 898 F.2d at 886). Moreover, arbitral immunity extends to administrative functions "associated with the adjudicative phase of the arbitration," such as providing notice and selecting the panel. *Austern*, 898 F.2d at 887 (affirming dismissal of suit against the CBOE on arbitral immunity grounds).[11] Consequently, insofar as petitioner seeks relief from FINRA based on either the conduct of the arbitration or its result, those claims are barred by arbitral immunity and will be dismissed pursuant to Rule 12(b)(6).

It is also well settled in the Second Circuit that SROs such as FINRA are immune from damages claims arising from actions taken in furtherance of their regulatory duties. *See Standard Inv. Chartered, Inc. v. Nat'l Ass'n of Sec. Dealers, Inc.*, 637 F.3d 112, 115 (2d Cir. 2011) ("There is no question that an SRO and its officers are entitled to absolute immunity from private damages suits in connection with the discharge of their regulatory responsibilities."); *Xu v. Fin. Indus. Regul. Auth. Inc.*, 503 F. App'x 7, 8 (2d Cir. 2012) (summary order) ("As an SRO, FINRA and its officers 'are entitled to absolute immunity from private damages suits in connection with the discharge of their regulatory responsibilities.'") (quoting *Standard Inv. Chartered*, 637 F.3d at 115). Accordingly, if and to the extent petitioner seeks damages from FINRA for its operation of the BrokerCheck disclosure system, *see* Am. Pet ¶ C (complaining that BrokerCheck is used by

---

[11] *See, e.g.*, *Schorr v. Am. Arb. Ass'n Inc.*, 2022 WL 17965413, at *9 (S.D.N.Y. Dec. 27, 2022) (dismissing all claims against the AAA "associated with the adjudicative phase of the arbitration"); *Gill v. Fin. Indus. Regul. Auth.*, 2013 WL 1203746, at *5 (S.D.N.Y. Mar. 6, 2013), *adopted*, 2013 WL 1201499 (S.D.N.Y. Mar. 25, 2013) (dismissing claims accusing FINRA of failing to timely notify [plaintiff] of the statement of claim or the award); *Prudential Bache-Sec. (Hong Kong) Ltd. v. Nat'l Ass'n of Sec. Dealers Disp. Resol., Inc.*, 289 F. Supp. 2d 438, 440 (S.D.N.Y. 2003) ("arbitrators and their sponsors are immune from suit for jurisdictional determinations made in their capacity as arbitrators").

broker-dealers "as a defamatory avenue to prevent competition"), or for the reputational damage she incurred as a result of her CRD entry, *see* Pet. Mem. ¶ 2 (alleging that her "constitutional right to earn a livelihood" was "seriously obstructed" by the "defamatory disclosures placed on her record"), those claims are also barred. *See Lobaito*, 599 F. App'x at 401 (relying on FINRA's regulatory immunity to affirm district court's dismissal of plaintiff's claim that FINRA damaged his reputation and prevented him from obtaining gainful employment by "allowing a comment from his former employer to remain on his licenses without substantiation"); *Santos-Buch v. Fin. Indus. Regul. Auth., Inc.*, 591 F. App'x 32, 34 (2d Cir. 2015) (summary order) (affirming, on immunity grounds, district court's dismissal of plaintiff's claim for damages arising from FINRA's publication of his disciplinary records); *Lucido v. Mueler*, 2009 WL 3190368, at *7 (E.D. Mich. Sept. 29, 2009) (FINRA has "absolute regulatory immunity" against claim that it improperly disclosed [plaintiff's] criminal background through BrokerCheck), *aff'd sub nom. Lucido v. F.B.I.*, 427 F. App'x 497 (6th Cir. 2011).

That leaves the question whether FINRA is properly named in this action at all. Ordinarily, because "the authority to vacate an arbitrator's award is exclusive to the court," the only proper respondents in a proceeding to confirm or vacate an arbitration award are the opposing parties in the arbitration. *Seligman v. Allstate Ins. Co.*, 195 Misc. 2d 553, 556, 756 N.Y.S.2d 403, 406 (N.Y. Sup. Ct., Nassau Co., 2003). Under FINRA's own rules, however, petitioner Tanjutco was required to "name FINRA as an additional party and serve FINRA with all appropriate documents," because she is "seeking judicial confirmation of an arbitration award containing expungement relief." FINRA Rule 2080(b). FINRA thus concedes that it was properly named as a respondent with respect to the branch of the petition seeking confirmation of paragraph 8 of the Award, which recommends expungement of Occurrence No. 1865245 (concerning the 2016 customer dispute).

The rule also requires – more broadly – that FINRA be named and served whenever an associated person "petition[s] a court for expungement relief." FINRA Rule 2080(b).[12] Read liberally, Tanjutco's petition seeks direct injunctive relief against FINRA to force it to expunge Occurrences No. 2169419 and 2169420 (concerning her resignation from NYLife while she was subject to enhanced supervision review and discipline because of her unapproved OBA). Petitioner contends here (as she did in arbitration) that expungement is required because she was later given only a Cautionary Action regarding her OBA and told by a FINRA investigator that it did not need to be reported on her U-4 and would not be included in the CRD. *See* Am. Pet. ¶ 9; *id.* at 15, ¶ b.[13]

Although Rule 2080(b) permits FINRA to be named as a respondent with respect to that claim, it does not create a private cause of action for expungement. *See Messinger v. JPMorgan*

---

[12] This branch of the rule does not appear to be limited to petitions for expungement of information relating to customer disputes. *Cf.* FINRA Rule 2080(a) (requiring associated persons who seek to "expunge information from the CRD system *arising from disputes with customers*" to "obtain an order from a court of competent jurisdiction directing such expungement or confirming an arbitration award containing expungement relief") (emphasis added).

[13] In making this claim, petitioner appears to confuse two different events, with two different disclosure implications. Tanjutco resigned from NYLife on November 15, 2021, while she was subject to enhanced supervision review and discipline – by NYLife – for, among other things, her continued participation in unapproved OBA. That is what NYLife reported on her Form U-5, *see* NYLife U-5 (Dkt. 5-1 at ECF pp. 90, 91, 93, 94 (questions 7B, 7F(1)). That is also what appears on BrokerCheck. *See* https://brokercheck.finra.org/individual/summary/5565044 (reporting that petitioner "was under enhanced supervision review and discipline for her continued participation in a denied outside business activity" at the time of her voluntary resignation). Six months later, on May 2, 2022, FINRA completed its own OBA investigation and issued petitioner a Cautionary Action, which is "a formal warning," *Price v. UBS Fin. Servs., Inc.*, 2022 WL 1058374, at *2 (D.N.J. Apr. 8, 2022), *aff'd*, 2023 WL 3816523 (3d Cir. June 5, 2023), rather than a reportable disciplinary action. In a letter advising petitioner of the results of that investigation, a FINRA Investigations Manager stated that she was not required to disclose the Cautionary Action on her Form U-4 and that it would not be included in the CRD. *See* Am. Pet. ¶¶ 9-10; FINRA Warning (Dkt. 5 at ECF p. 10). Consistent with that representation, there is no reference to the Cautionary Action (or the underlying FINRA investigation) on BrokerCheck. But nothing in FINRA's May 2, 2022 email – and no rule or regulation identified by petitioner – required NYLife or FINRA to retroactively modify petitioner's U-5 or expunge the corresponding information from CRD.

*Chase Bank, N.A.*, 2014 WL 904528, at *2 (S.D.N.Y. Mar. 7, 2014) (Nathan, J.) ("FINRA Rule 2080 does not provide Plaintiff with a free-standing 'expungement' cause of action."). Nor does petitioner identify any other basis for such a claim.[14] Consequently, petitioner's direct expungement claim against FINRA, along with her damages claims against FINRA, will be dismissed pursuant to Rule 12(b)(6). *See id.* (dismissing free-standing expungement claim); *Loftus v. Fin. Indus. Regul. Auth., Inc.*, 2021 WL 325773, at *1, *4-5 (S.D.N.Y. Feb. 1, 2021) (dismissing claim asking "that this Court order FINRA to expunge [plaintiff's] disciplinary record or grant him a hearing on his expungement petition").

For these reasons, FINRA remains a respondent in this action only with respect to petitioner's request, made pursuant to the FAA, for confirmation of paragraph 8 of the Award.

### C.    Federal Question Jurisdiction

The Court must now consider whether it has subject-matter jurisdiction over the remaining claims in this action. 28 U.S.C. § 1331 gives the federal district courts jurisdiction over claims "arising under the Constitution, laws, or treaties of the United States." A case arises under federal law within the meaning of § 1331 if the pleading "establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Bay Shore Union Free School Dist. v. Kain*, 485 F.3d 730, 734-35 (2d Cir. 2007) (quoting *Empire Healthchoice Assur. v. McVeigh*, 547 U.S. 677, 689-90 (2006)).

---

[14] Tanjutco suggests, in her petition, that by failing to expunge Occurrences No. 2169419 and 2169420, FINRA was in violation of the "final resolution" of its OBA investigation by means of a Cautionary Action. *See* Am. Pet. ¶ 9. But even if the facts stated in the Amended Petition supported petitioner's theory (they do not, *see* n.13, *supra*), it would not give rise to a cognizable claim against FINRA. The Second Circuit has long held that there is no implied private right of action against FINRA for its alleged "failure to comply with its own rules." *Santos-Buch*, 591 F. App'x at 33-34 (citing *Desiderio*, 191 F.3d at 208).

However, as explained in *Tanjutco I*, the "[m]ere invocation of federal jurisdiction, without any facts demonstrating a federal law claim, does not create federal subject matter jurisdiction." 2023 WL 4848465, at *3.

The Amended Petition repeatedly "invokes" federal law, but it does not demonstrate the existence of any federal claim running against the NYLife Parties (or against FINRA in its capacity as a respondent with respect to petitioner's claim for confirmation of paragraph 8 of the Award). To the extent petitioner asserts a damages claim for violation of her due process rights arising out of the SEC's authorization of BrokerCheck, *see* Am. Pet. ¶ C, that claim does not run against the NYLife Parties – and, as explained above, is barred by the doctrine of sovereign immunity (as to the SEC) and regulatory immunity (as to FINRA). Petitioner's invocation of her "right to federal procedural due process," *id.*, therefore does not state any federal claim against the remaining parties. Moreover, because NYLife and NYLIC are "private companies that are not alleged to work for any state or other government body," *Tanjutco I*, 2023 WL 4848465, at *3, they cannot be liable to petitioner under 42 U.S.C. § 1983 for violating her due process rights. *Id.*; *see also Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 323 (2d Cir. 2002) ("[T]he United States Constitution regulates only the Government, not private parties.").

Nor can petitioner secure a federal forum by alleging that this action "necessarily involves [the] determination of federal question against illegal restraint of trade[.]" Am. Pet. ¶ C. Nowhere in her papers does petitioner allege facts that could constitute a federal anti-trust violation. To the contrary: she makes it clear, later in her pleading, that the "illegal restraint of trade" was the two-year non-replacement clause in her Agent's Contract, which, in her view, failed the three-pronged test for reasonableness set out in *BDO Seidman v. Hirshberg*, 93 N.Y.2d 382, 389, 712 N.E.2d 1220 (1999), and therefore violated New York law. Am. Pet. ¶ 24.

23

Similarly, after unsuccessfully seeking defamation damages from NYLife before the Panel, petitioner cannot recast the same claim in Constitutional terms – and thereby invoke this Court's federal question jurisdiction – by characterizing her resulting loss of gainful employment as an infringement on her "Constitutional right to livelihood." Am. Pet. ¶ 26. Defamation "is an issue of state law, not of federal constitutional law." *Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004). Even if there were a constitutional element to her defamation claim, petitioner could not seek damages from the NYLife Parties under § 1983, because they are not state actors. *Tanjutco I*, 2023 WL 4848465, at *3.[15]

Lastly, petitioner's vague allegation that this action concerns "interstate commerce involving securities," Am. Pet. ¶¶ C, 36, has no jurisdictional effect. The fact that the parties to a dispute are engaged in "interstate commerce" (as Tanjutco and the NYLife Parties surely were) is not enough to federalize that dispute. *See Dorn v. Dorn's Transp., Inc.*, 562 F. Supp. 822, 824 (S.D.N.Y. 1983) ("Dorn argues that the federal courts have jurisdiction to enforce any arbitration award deriving from a transaction in interstate commerce. This argument is plainly wrong.

---

[15] Even more fundamentally, petitioner cannot rely on her restraint-of-trade and defamation claims to confer federal question jurisdiction on this Court because the same claims were before the arbitrators, as part of the "'underlying substantive controversy' between the parties," *Badgerow*, 596 U.S. at 5 (quoting *Vaden*, 556 U.S. at 62), and cannot be relitigated here. *See Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004) ("A federal court cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law."). Under the FAA, the issue in this Court is not the reasonableness of the non-replacement provision of the Agent's Contract, nor the effect of NYLife's U-5 on her livelihood, but "the enforceability of an arbitral award," *Badgerow*, 596 U.S. at 9, which presents no federal questions. *See Trustees of New York State Nurses Ass'n Pension Plan v. White Oak Glob. Advisors, LLC*, 2022 WL 2209349, at *2 (S.D.N.Y. June 20, 2022) (after *Badgerow*, "a district court may not exercise jurisdiction solely because the underlying substantive controversy between the parties would have been maintainable in federal court for example, by presenting a federal question").

Although the [FAA] applies only to cases involving maritime transactions or interstate commerce, 9 U.S.C. § 2, proof that the parties' contract involved commerce does not by itself establish the independent federal jurisdiction required by the Act."); *Goldstone*, 402 F. Supp. at 1293 (noting that it is "well settled" that, to create federal jurisdiction, "some federal right, be it constitutional, statutory, or 'federal common law' must exist, independent of the general rights emanating from the power of Congress to regulate commerce"). I therefore conclude that petitioner has failed to demonstrate the existence of federal question jurisdiction.

### D. Diversity Jurisdiction

28 U.S.C. § 1332(a) permits suit in a federal district court where the matter in controversy exceeds the sum or value $75,000 and is between (1) "citizens of different states" or (as relevant here) (2) "citizens of a State and citizens or subjects of a foreign state." It is "hornbook law" that whether diversity exists depends on the parties' citizenship at the time the action was commenced. *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998); *accord Fuerst v. Fuerst*, 832 F. Supp. 2d 210, 216 (E.D.N.Y. 2011) ("Although Hannelore now resides in Germany, because she moved to Germany after this action was commenced, it does not factor into the Court's jurisdictional analysis."). Moreover, the statute requires "complete" diversity, such that if the plaintiff and even one defendant are citizens of the same state, diversity jurisdiction does not exist. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

For diversity purposes, a corporation is "a citizen of every State . . . by which it has been incorporated and . . . where it has its principal place of business," 28 U.S.C. § 1332(c)(1), while a limited liability company "takes the citizenship of each of its members." *Bayerische Landesbank, N.Y. Branch v. Aladdin Capital Mgmt. LLC*, 692 F.3d 42, 49 (2d Cir. 2012). Thus, both NYLIC and NYLife are – and were, when this action was filed – citizens of New York. Won Aff. ¶¶ 2-3.

"In order to be a citizen of a State within the meaning of the diversity statute, a natural person must both be a citizen of the United States *and* be domiciled within the State." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 828 (1989). An individual's "domicile" is her "true, fixed and permanent home and place of habitation," that is, "the place to which, whenever [s]he is absent, [s]he has the intention of returning." *MBC Ventures, LLC v. Miniventures of NY, Inc.*, 2021 WL 3709808, at *6 (D. Conn. Aug. 20, 2021) (quoting *Martinez v. Bynum*, 461 U.S. 321, 331 (1983)). However, "United States citizens 'domiciled abroad are neither citizens of any state of the United States nor citizens or subjects of a foreign state,' so that '§ 1332(a) does not provide that the courts have jurisdiction over a suit to which such persons are parties.'" *Herrick Co., Inc. v. SCS Communications, Inc.*, 251 F.3d 315, 322 (2d Cir. 2001) (quoting *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 68 (2d Cir. 1990)).

The same is true of litigants with dual citizenship, because, for diversity purposes, "American citizenship will determine diversity." *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991). Thus, "[w]hen a United States dual citizen is domiciled abroad, she is considered neither a citizen of any state within the United States, nor a citizen or subject of a foreign state." *Buff v. Miltsein*, 2024 WL 3638697, at *2 (S.D.N.Y. Aug. 2, 2024) (no diversity jurisdiction existed where plaintiff was dual citizen of the United States and France and resided in France with "no remaining ties to the United States" when the action was filed); *see also Fuerst*, 832 F. Supp. 2d at 216-17 (no diversity jurisdiction existed where plaintiff was a dual citizen of the United States and Germany and a resident of Germany when the complaint was filed).

When she filed this action, Tanjutco averred that she resided in New York City. Pet. ¶ 1. She made the same representation in her application for leave to proceed *in forma pauperis* (Dkt. 2), which was granted. Three months later, when she filed her Amended Petition, Tanjutco averred

26

that she was "a foreign dual citizen of the Philippines" and resident of "Dasmarinas Village, Makati City, Philippines where she is currently situated." Am. Pet. ¶ 1. In her reply brief, she explained that due to her inability to "obtain subsequent registration" she "resumed residency at her home country which she never abandoned." Pet. Reply ¶ 10.

Petitioner does not specify *when* she returned to the Philippines to live. For diversity purposes, however, it does not matter. By her own account, petitioner is a U.S. citizen who was domiciled either in New York or in the Philippines when she filed this action. If she was domiciled in New York, she was a citizen of New York for diversity purposes, such that diversity jurisdiction does not exist. 28 U.S.C. § 1332(a)(1). If she was domiciled in the Philippines, she was "neither a citizen of any state within the United States, nor a citizen or subject of a foreign state," such that diversity jurisdiction does not exist. *Buff*, 2024 WL 3638697, at *2. I therefore conclude that diversity jurisdiction does not exist.

## IV.    CONCLUSION

For the reasons stated above, petitioner's claims against the SEC are DISMISSED for lack of subject-matter jurisdiction; her claims against FINRA are DISMISSED WITH PREJUDICE for failure to state a claim upon which relief can be granted (except to the extent that FINRA is named as a respondent with respect to petitioner's request to confirm paragraph 8 of the Award); and her remaining claims are DISMISSED for lack of subject-matter jurisdiction.

The Clerk of Court is respectfully directed to close the motion at Dkt. 35, enter judgment in favor of the respondents, and close the case.

Dated: New York, New York
      September 10, 2024

                                      _____

                                      **BARBARA MOSES**
                                      **United States Magistrate Judge**